**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **TONI SALINAS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **Case No. 4:26-CV-027-DC-DF** |
| | § | **JURY TRIAL DEMANDED** |
| **CITY OF KERMIT,** | § | |
| **MIKE ARISMENDEZ,** | § | |
| **JUAN JAMIE RAMOS,** | § | |
| **and CESAR RAMIREZ** | § | |
| | § | |
| **Defendants.** | § | |

# FIRST AMENDED PLAINTIFF'S ORIGINAL PETITION

NOW COMES Plaintiff Toni Salinas, complaining of Defendants City of Kermit, Mike Arismendez, Juan Jaime Ramos, and Cesar Ramirez, and for cause of action would show the Court the following:

## Discovery Control Plan

1. As provided in Rule 190, Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery under Level 2.

## Plaintiff

2. Plaintiff, TONI SALINAS, is an individual whose address is 836 Jeffee Dr., Kermit, Texas 79745. The last three digits of Plaintiff's driver's license number are **713**. The last three digits of Plaintiff's Social Security number are **624**.

## Defendants

1. Defendant, CITY OF KERMIT, is an entity and municipality organized under Texas law and located in Winkler County, Texas, and may be served with process by serving the City of Kermit via electronic filing messenger by and through the attorney of record.

2. Defendant, MIKE ARISMENDEZ, is the City Manager of the City of Kermit and may be served with process by serving the City of Kermit via electronic filing messenger by and through the attorney of record.

3. Defendant, JUAN JAMIE RAMOS, is the Assistant City Manager and Chief of Police and Kermit and may be served with process by serving the City of Kermit via electronic filing messenger by and through the attorney of record.

4. Defendant, CESAR RAMIREZ, is the Director of Public Works for the City of Kermit and may be served with process by serving the City of Kermit via electronic filing messenger by and through the attorney of record.

5. This Court has jurisdiction over Defendants, the City of Kermit, Mike Arismendez, Juan Jaime Ramos, and Cesar Ramirez, because said Defendants are residents of Texas.

**Venue**

6. Venue is proper in that the events giving rise to this cause of action occurred within the City of Kermit, Texas, Winkler County. located within the United States District Court for the Western District of Texas Midland/Odessa Division.

**Jurisdiction**

7. The damages sought in this suit are within the jurisdictional limits of the Court. As required by Rule 47, Texas Rules of Civil Procedure, Plaintiff states that Plaintiff seeks monetary relief over $250,000 but not more than $1,000,000, non-monetary relief, and a demand for judgment for all the other relief to which the party deems entitled.

**Notice of Claim**

8. Plaintiff delivered written notice of this original claim to Defendants City of Kermit, Mike Arismendez, Juan Jaime Ramos, and Cesar Ramirez upon issue of citation, after filing petition on March 10, 2026, advising Defendants, the City of Kermit, Mike Arismendez, Juan Jaime Ramos, and Cesar Ramirez, in reasonable detail of the specific complaint made the subject of this action and the amount and nature of the damages and expenses sought.

## Facts

9. On October 2, 2023, the City of Kermit hired Toni Salinas, Petitioner, as a sanitation truck driver.

10. At the time of hiring and thereafter, Toni Salinas was the only female sanitation truck driver and the only female in the Solid Waste/Sanitation Department for the City of Kermit.

11. Toni Salinas was treated differently by the other younger male employees in the department, specifically the male mechanics, which she had to interact with on a daily basis.

12. Toni Salinas attempted to track, verify, and document repairs on her sanitation work truck with the male mechanics, because she kept having different mechanical and hydraulic issues with the vehicle.

13. While tracking, verifying, and documenting repairs, Toni Salinas was subjected to ongoing harassment by the younger male mechanics, creating over time a very hostile work environment.

14. The mechanics would ignore her when she came in to check on the status of her truck repairs. If they didn't ignore her, the men would be dismissive and sarcastic with her. Most of the time, they would return her truck and state it was repaired and ready to go only to find out that nothing had been done. The same problem still existed on the truck at the time. Her vehicle was always breaking down, but instead of fixing the problem, the mechanics would wait and report to her superiors that it was operator negligence and her inability to keep up with the maintenance of the vehicle.

15. The younger male mechanics kept escalating to the point that they started bad mouthing her to her face and behind her back. They laughed at her and cracked jokes at her expense. It got to a point where none of them would do repairs on her sanitation work truck. It was severe and pervasive enough that it started altering the conditions of Plaintiff's workplace of employment. Toni Salinas could not do her job effectively, because of the always acting up.

16. Toni Salinas was treated differently from the other male employees and by her superiors, Mike Arismendez (City Manager), Cesar Ramirez (Director of Public Works), and Juan Jaime Ramos (Assistant City Manager and Chief of Police).

17. Periodically, Toni Salinas engaged in a protected activity of reporting safety equipment hazards and unsafe practices to her immediate superior, Cesar Ramirez. To her knowledge, Mr. Ramirez did not investigate the various dangerous conditions; he did not initiate any type of safety protocols; and he did not hold any of the younger male employees accountable for such.

18. This is corroborated by co-worker, Jimmy Harris, who personally witnessed incidents of harassment and hostility directed at Toni Salinas by the younger male employees and supervisory personnel.

19. In June 2024, Toni Salinas engaged in a protected activity of reporting sex/gender and age discrimination and harassment severe enough to create a hostile work environment to Cesar Ramirez and Juan Jaime Ramos and provided video evidence to support her claims on July 10, 2024. The video footage documented the ongoing discrimination, harassment, and hostility by the younger male employees.

20. Immediately after receiving this video evidence on July 10, 2024, Defendant Cesar Ramirez called Toni Salinas and imposed a permanent "gag order." Cesar Ramirez instructed Toni Salinas not to communicate directly with any of the mechanics about work-related matters anymore and to channel all repair and safety communications solely through him.

21. Text message records from July 12 - 16, 2024, document Toni Salinas' diligent attempts to comply with this new, unsafe protocol(s) while simultaneously raising concerns about her inability to verify or track necessary repairs. In doing so, Plaintiff created a contemporaneous record of the safety hazards created by Cesar Ramirez's order.

22. On July 15, 2024, five days after Toni Salinas' July 10, 2024, video report and "gag order," Toni Salinas' truck suffered a catastrophic loss of its air brakes while she was hauling a 13-ton load. The truck had to be towed.

23. The sworn affidavit of Jimmy Harris, a certified semi-truck brake mechanic, confirmed the cause of the brake failure. Mr. Harris attested that upon close inspection, he found all six of the truck's slack adjusters had been dangerously backed off, rendering the brakes inoperable. He explained that slack adjusters do not back off on their own, and that the likelihood that all six would be backed off at the same time was highly improbable. Jimmy Harris further

attested that when he reported this life-threatening finding to the city's mechanics, he was reprimanded and explicitly instructed not to assist Toni Salinas.

24. To date, no investigation has been initiated regarding the brake failure or how six slack adjusters could be backed off simultaneously; no change in safety protocols, policies, or procedures for transparency; none of the younger male mechanics or other male employees were held accountable for the lack of maintenance or repair of the slack adjusters; Plaintiff was still assigned the same sanitation work truck; and Plaintiff's "gag order" was still in place obstructing her ability to track and verify maintenance and repairs for her safety and the safety of the public.

25. On September 4, 2024, Defendants issued Toni Salinas a disciplinary write-up for an incident that was, in fact, caused by a documented, pre-existing hydraulic leak on the truck, not operator negligence. Again, the younger male mechanics did not properly maintenance or make necessary repairs on the vehicle before releasing it to Plaintiff to drive and operate. In spite of documented proof of the pre-existing hydraulic leak, Toni Salinas' superiors held her accountable. To date, none of the younger male mechanics were investigated, reprimanded, demoted, suspended, or terminated by city management.

26. Following this unwarranted write-up, Toni Salinas maintained a clean disciplinary record with no adverse actions for over ten consecutive months. There was still tension in the department and the "gag order" limited the transparency of maintenance and repairs on Plaintiff's work truck, but she did not have as many mechanical issues or concerns with the vehicle at that time. Contact with other male employees in the department was minimal.

27. However, on June 30, 2025, Toni Salinas' assigned sanitation work truck suffered a legitimate mechanical failure, which she documented in her mandatory Driver Vehicle Inspection Report (DVIR) as required by department policy.

28. Less than 24 hours later, on July 1, 2025, the City of Kermit through upper management terminated Toni Salinas' employment.

29. According to the Personnel Policy for the City of Kermit, page 32, Section 47 Cause for Dismissal (U), "Any employee who believes he/she has been unfairly terminated may have the right to utilize the Grievance Procedure, as set out in Section 46 herein."

30. According to the Personnel Policy for the City of Kermit, page 28, Section 44 – Motor Vehicle Accident Review (C), "An employee who believes he/she has been unfairly treated shall have the right to appeal through the established grievance procedure."

31. According to the Personnel Policy for the City of Kermit, page 29, Section 46 – Complaints and Grievance Procedure, "This procedure is established to encourage the discussion of employee problems between the employee and his Supervisor. It is for the purpose of assuring each individual employee that his/her employment problems or disagreements will be considered fairly without delay and that any employee who presents a complaint in good faith and in a reasonable manner, will be free from any restraint, interference, discrimination or reprisal.

32. According to the Personnel Policy for the City of Kermit, page 29, Section 46(A):

"A. An employee who believes he/she has been unfairly treated, or wishes to correct a misunderstanding, or desires information concerning his work relationship will have the right, with or without his representative, to discuss such matters with his immediate Supervisor or higher levels of supervision, if he so desires.

1. An employee shall first discuss his complaint with his/her Supervisor and Department head in a joint meeting within seven (7) calendar days of the occurrence of the problem, in an attempt to reach a satisfactory solution. The decision of the Department head shall be made in writing within five (5) calendar days.

2. A complaint or grievance not satisfactorily resolved in Step I may be appealed, in writing, by the employee to an employee grievance committee through the City Manager within five (5) calendar days of the previous decision in Step l. In a joint meeting, scheduled within seven (7) calendar days of receipt of written grievance appeal by the City Manager, the grievance will be discussed with all concerned and a decision rendered in writing within five (5) calendar days.

3. If unable to affect a satisfactory solution to a complaint or grievance, final appeal shall be made in writing to the City Manager within five (5) calendar days of the decision of Step 2. The City Manager shall render a decision in writing on the problem within five (5) calendar days; such decision shall be final and binding on all parties.

4. A copy of all written grievance appeals shall be delivered or submitted in person to the Mayor and City Council by the City Manager within twenty-four (24) hours of receipt. The written decisions shall be mailed as they become available.

5. The employee grievance committee shall consist of any three (3) employees occupying the following positions: Chief of Police; Police Captain; Water and Sewer Supervisor; Chief Dispatcher and Senior Clerk Utility Office. The appealing employee's

Department Head and/or Supervisor shall be excluded. The three (3) employees to sit on the committee shall be drawn by lot by the employee filing such grievance. The first three (3) names drawn shall comprise the committee, with the remaining employees to serve as alternates."

6. According to the Personnel Policy for the City of Kermit, page 32, Section 47 Cause for Dismissal, "Any of the following are declared to be special cause for prompt dismissal from the service of the City, though dismissal action may be based on causes other than those enumerated.

A. The employee is incompetent or inefficient in the performance of his duty.
B. The employee has habitually been convicted of violating the ordinance of the City of Kermit.
C. The employee has been discourteous, offensive or abusive, either by attitude, language or conduct, to the public or to fellow employees while said employee is in the line of duty.
D. The employee has some permanent or chronic physical or mental ailment or defect which incapacitates him from the proper performance of his duties.
E. The employee has been convicted of a felony or any crime involving moral turpitude.
F. The employee is guilty of misappropriation, theft or conversion of City property whether on or off duty.
G. The employee has hindered the regular operation of the department because of habitual tardiness or excessive absenteeism.
H. The employee is guilty of drinking intoxicants and/or abusing drugs while on duty; or convicted of intoxication in a public place while on duty.
I. The employee through negligence or willful conduct has caused damage to City property or waste of City supplies.
J. The employee has solicited or taken for personal use a fee, gift or other valuable thing while in the course of his City employment or in connection with it, when such fee, gift or other valuable thing is given him by any person in the hope or expectation of receiving a favor or better treatment than that accorded other persons.
K. The employee has been absent without leave or has failed to report after leave of absence has expired, unless such absence is accepted by the Supervisor as excusable.
L. The employee has incited or attempted to incite, or has participated in, a strike against the City.
M. The employee has been guilty of an act or conduct showing a lack of good moral character or any other conduct unbecoming an employee of the City.
N. The employee has participated in a political campaign in any' manner that is contrary to the provisions Section 8, titled "Political Activity."
O. The employee failed to report an accident involving a City vehicle or damage to City property.
P. The employee has violated any official city or departmental rule, regulation or special order, or has failed to obey any lawful and reasonable direction given him by his

Supervisor, when such violation or failure to obey amounts to insubordination or serious breach of discipline which may reasonably be expected to result in lower morale in the organization or to result in loss, inconvenience or injury to the City or the public.

Q. The employee has violated or failed to follow any policy duly implemented in the organization, such as, the Personnel Policy, when such violation or failure to obey amounts to insubordination or serious breach of discipline which may reasonable be expected to result in lower morale in the organization or to result in loss, inconvenience or injury to the City or the public.

R. The employee has been guilty of any other acts or conduct of equal gravity to the reasons enumerated in this section.

S. Ignorance of any official rule, regulation or special order shall not be an excuse for its violation.

T. Refusal or failure of a drug and/or alcohol test will result in immediate dismissal.

U. Any employee who believes he/she has been unfairly terminated may have the right to utilize the Grievance Procedure, as set out in Section 46 herein."

33.The termination letter, authored and signed by Juan Jaime Ramos, was based on "for cause" with a series of false allegations:

a. Fabricated Disciplinary History - The letter falsely alleged Toni Salinas had write-ups dating back to February 13, 2013, a factual impossibility, as she was not hired until October 2, 2023. Over the course of her employment with the City of Kermit, Toni Salinas had a total of four (4) write-ups at the time of termination:

i. Self-reported Non-monetary write-up – not driver negligence but learning new route and sanitation work truck nuances.

ii. On September 4, 2024, caused by a documented, pre-existing hydraulic leak on the truck, not operator negligence.

iii. On September 9, 2024, Toni Salinas did not report equipment failure due to her inability to detect the failure and received a disciplinary write-up and a 90-day probation.

iv. On June 30, 2025, Toni Salinas received a write-up due to a "failure to report" mechanical failure (PTO was out of service in the truck (24-1). However, Plaintiff had timely reported the failure to Mechanic David Tate in the yard.

.

If there had been more write-ups, Toni Salinas should have been put on notice by the City of Kermit and upper management.

b. Misattributed Property Damage - The letter falsely claimed Toni Salinas caused an estimated $48,650.00 in damages. Documents later obtained via Freedom of Information Act (FOIA) prove this amount includes numerous incidents of significant damage caused by other male truck drivers that were knowingly and falsely attributed to Toni Salinas. Comparing the time sheets, GPS tracking on the sanitation work trucks, and the filed

insurance claims required to the dates of each incident will prove that Plaintiff was either not yet hired or off duty or another younger male truck driver was driving her truck and/or route at the time damages were incurred

c. False "Failure to Report" - The letter falsely cited an "unreported" damage incident from June of 2025. This was the same incident that Toni Salinas had properly reported on June 30, 2025, and she has documentation time-stamped to support such.

i. According to the Personnel Policy for the City of Kermit, page 27, section 43, "All accidents involving city vehicular equipment must be reported immediately. Failure to report any accident, however minor, or to comply with the following accident procedure, may result in disciplinary action."

ii. According to the Personnel Policy for the City of Kermit, page 27, section 43(A)(8), "Notify your immediate supervisor and complete an accident report immediately upon your return to your department."

Toni Salinas was very aware of the Personnel Policy for the City of Kermit and followed both policies and procedures and has copies via email or text of each report made during her employment with the City of Kermit.

34. Less than 24 hours after Toni Salinas' termination, the City of Kermit had hired a replacement sanitation truck driver to replace her. This new driver was a young male with no prior experience driving trucks.

35. Note that the City of Kermit interviews, fingerprints, runs a background check, and drug tests potential new employees and drivers before hiring them; and thus, the hiring process takes a minimum of three to five business days to complete if not longer. To hire a young male truck driver within 24 hours of Toni Salinas' termination, the City of Kermit and upper management would have needed to start interviewing potential replacement drivers at least three days prior in anticipation of Plaintiff's termination by the city.

36. Upon review of the termination letter and documented by video evidence, when Toni Salinas asked to see the evidence supporting the alleged $48,650.00 in damages, Mike Arismendez, the City Manager, personally and physically removed the invoice from Toni Salinas' view.

37. At the time of termination, Toni Salinas was 66 years old. Plaintiff was planning to retire with the city at 75 years of age. To date, Plaintiff has been unable to secure another job in

her field. The likelihood of her being able to secure gainful employment at her age and with her 30 plus years of experience is doubtful.

38. Mike Arismendez actively concealed the evidence and instructed Plaintiff that her only recourse was to file an open records request to see the very documents being used to end her career.

39. On July 3, 2025, just two days after Toni Salinas' termination and the denial of access to her employee file by the City Manager, Toni Salinas formally submitted a Freedom of Information Act (FOIA) / Texas Public Information Act (TPIA) request for her complete personnel file and all documents related to the alleged damages.

40. The City of Kermit did not respond and release the documents to Plaintiff until July 22, 2025, a 19-day delay which obstructed Toni Salinas' ability to mount a timely and effective rebuttal to the false allegations.

41. Upon receiving the file, Toni Salinas reviewed and discovered the misattributed damage reports. Plaintiff then requested all investigative and damage reports related to the alleged $48,650.00 in damages.

42. In response, Cesar Ramirez sent *Certified Letter #7019 0700 0001 1474* 9529, in which he admitted that the City of Kermit possessed "no written record" of the incidents or the dates of the alleged damages. Cesar Ramirez further admitted he had only received "phone calls" regarding the incidents.

43. This letter of admission is in direct contradiction to the Plaintiff's termination letter and the City of Kermit's "for cause" justification.

44. According to the Personnel Policy for the City of Kermit, page 27, section 43, "All accidents involving city vehicular equipment must be reported immediately. Failure to report any accident, however minor, or to comply with the following accident procedure, may result in disciplinary action."

45. According to the Personnel Policy for the City of Kermit, page 27, section 43(A)(8), "Notify your immediate supervisor and complete an accident report immediately upon your return to your department."

46. According to the Personnel Policy for the City of Kermit, page 27, section 43(B), "After an employee reports a motor vehicle incident, it shall be the direct responsibility of the Supervisor in charge of such employee to see that an accident report is immediately prepared, containing how, where and when the accident occurred together with all pertinent information available. Said report shall also contain the names and addresses of all witnesses that were at the scene of said accident. All accident reports shall be transmitted to the City Manager's office not later than twenty-four (24) hours after occurrence thereof."

47. Cesar Ramirez admitted that the City of Kermit possessed "no written record" of the incidents or the dates of the alleged damages. Cesar Ramirez further admitted he had only received "phone calls" regarding the incidents. Evidently, Cesar Ramirez did not require each employee to prepare an accident report containing how, where and when the accident occurred together with all pertinent information available as specified in the Personnel Policy for the City of Kermit, page 27, section 43(B), as evidenced by his admission of "no written record."

48. If the City of Kermit possessed "no written record" of the incidents or the dates of the alleged damages, then City Manager Mike Arismendez did not require each Supervisor to see that accident reports are immediately prepared, containing how, where and when the accident occurred together with all pertinent information available as specified in the Personnel Policy for the City of Kermit, page 27, section 43(B), as evidenced by "no written record."

49. According to the Personnel Policy for the City of Kermit, page 27, section 44, "The purpose of the motor vehicle accident review is to assist in the development of safer driving practices by employees of the City. Department Heads shall be responsible for review of all within their departments."

50. As a Department Head, Cesar Ramirez did not schedule or prepare or oversee the required motor vehicle accident reviews with employees to assist in the development of safer driving practices by employees of the City of Kermit as specified in the Personnel Policy for the City of Kermit, page 27, section 44, as evidenced by his own admission of "no written record."

51. As City Manager, Mike Arismendez did not oversee or require all Department Heads to perform a motor vehicle accident reviews with employees to assist in the development

of safer driving practices by employees of the City of Kermit as specified in the Personnel Policy for the City of Kermit, page 27, section 44, as evidenced by "no written record."

52. According to the Personnel Policy for the City of Kermit, page 28, section 44(A), "Should the Department Head determine that the accident was caused by the negligence of the City employee, any of the following disciplinary actions may be taken: 1) Letter of reprimand to the employee and a copy placed in the employee's personnel file; 2) Suspension without pay for any period not to exceed ten (10) working days; 3) Demotion in classification or pay, or both; 4) Permanently removed for the operation of any motor vehicle belonging to the City; 5) Dismissal; and 6) Other action as may be deemed appropriate by the Department Head, provided prior approval is given by the City Manager."

53. The City of Kermit and upper management did not follow the city's policy and procedure for city employee motor vehicle accidents as evidenced by Cesar Ramirez's admission of "no written record" in his *Certified Letter #7019 0700 0001 1474* 9529.

54. On September 2, 2025, Toni Salinas sent a formal demand letter for an investigation via certified mail into the "for cause" and false allegations made in her termination letter.

55. On September 15, 2025, the City of Kermit, through Mike Arismendez, provided its official response via *Certified Letter #7022 3330 0000 2338 1056*, unequivocally stating, "There will be no investigation."

56. This official refusal to investigate in the face of direct contradictory tangible evidence constitutes a direct act of ratification of the unconstitutional conduct by the City of Kermit's Manager and Executive Policymaker, Mike Arismendez.

57. On September 17, 2025, Plaintiff also sent *Certified Letter #70222410000253478166* directly to Juan Jaime Ramos, the author of the termination letter. In this correspondence, Toni Salinas formally demanded the retraction of the defamatory causes for her termination and rebutted the false allegations regarding the $48,650.00 in damages with specific facts identifying the responsible parties. Juan Jaime Ramos did not respond to this letter.

58. On October 23, 2025, and November 20, 2025, Toni Salinas presented her evidence to the Kermit City Council at a public meeting. This evidence included signed, sworn affidavits

containing the facts of collusion amongst management. To date, neither the Kermit City Council nor any other City Official has rebutted the sworn testimony contained in those affidavits.

59. On November 22, 2025, Plaintiff sent *Certified Mail #9589071052702825654168* to the City of Kermit, formally demanding the removal of the false records from her personnel file and making a new TPIA request for any documents related to corrections or updates made in response to her evidence. This formal demand for a name-clearing/defamatory remedy was met with no response from any City Official, further cementing the city-wide ratification of city management misconduct.

60. In December of 2025 and January of 2026, Toni Salinas sent a final formal Notice of Claim and Intent to Sue via certified mail to City Manager Mike Arismendez (*Certified Letter #9589 0710 5270 2825 6542 12*), City Attorney Slater Elza (*Certified Letter #9589 0710 5270 25825 6541 75*), and Mayor David Holbrook (*Certified Letter #7022 2410 0002 5347 8043*). No substantive response was ever received.

61. Having exhausted all internal remedies, Toni Salinas sought review from the Winkler County District Attorney's Office regarding the falsifying of government records, a criminal offense with no legal remedy in civil litigation.

62. On January 21, 2026, Plaintiff received a *Certified Letter #9589 0710 5270 2825 6459 51* from the District Attorney's Office, declining to pursue the matter and stating that it was a "civil issue."

63. On July 1, 2025, Toni Salinas filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), Agency Charge No. 453-2025-01848.

64. Plaintiff was issued an EEOC "right to sue" letter on December 11, 2025.

65. Toni Salinas timely filed *Plaintiff's Original Petition* on March 10, 2026.

66. To date, Toni Salinas has been unable to find gainful employment.

## Cause of Action(s)

## Cause I: Violations of Title VII of the Civil Rights Act of 1964, as Amended

### (A) Discrimination

Title VII of the Civil Rights Act of 1964 ("Title VII") is a federal law that prohibits employment discrimination based on race, color, religion, sex, national origin, and gender identity. It applies to employers, employment agencies, labor organizations, training programs, and other entities. Title VII protects employees and job applicants throughout the employment process, including recruitment, selection, termination, and other decisions that affect employment terms and conditions. It also prohibits employers from taking negative actions against employees who complain about discrimination, file a charge, or participate in an investigation or lawsuit. In cases of intentional discrimination, remedies may include compensatory and punitive damages.

"The Fifth Circuit has held that analysis of a Title VII claim is governed by *Swierkiewicz*—and not the evidentiary standard set forth in McDonnell Douglas. *Olivarez*, 997 F.3d at 600. Under *Swierkiewicz*, there are two elements a plaintiff must plead to support a disparate treatment claim under Title VII: "(1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Id*. (citations omitted) (emphasis in original)."

**a. Membership in a Protected Class**

Here, Toni Salinas was hired by the City of Kermit as a sanitation truck driver. Toni Salinas was the only female sanitation truck driver and the only female in the Solid Waste/Sanitation Department for the City of Kermit. Pursuant to Title VII, Toni Salinas was and is a member of a protected class and status under sex (gender) and the younger male employees within the department were outside of Plaintiff's protective class.

**b. Protected Activity – Reporting Safety Equipment Hazards and Unsafe Practices**

While employed, Toni Salinas was treated differently from other younger male employees by the City of Kermit's upper management. Toni Salinas engaged in a protected activity of periodically reporting safety equipment hazards and unsafe practices to her immediate supervisor, Cesar Ramirez. Plaintiff's reports were not taken seriously and were often quickly dismissed even with tangible proof. However, when other younger male employees reported

such safety equipment hazards and unsafe practices, whether true or not, those reports were not dismissed but documented and investigated by Cesar Ramirez and the city's upper management. Because Toni Salinas was treated differently than the other younger male employees when submitting safety reports, Plaintiff was subjected to employment discrimination by the City of Kermit and its upper management.

**c. Protected Activity – Reporting Discrimination and Harassment**

In June 2024, Toni Salinas engaged in a protected activity of reporting sex (gender) discrimination, age discrimination, and harassment severe enough to create a hostile work environment to Cesar Ramirez and Juan Jaime Ramos and provided video evidence to support her claims on July 10, 2024. The video footage documented the ongoing discrimination, harassment, and hostility by the younger male employees.

**d. Adverse Employment Action – Permanent "Gag Order"**

Within minutes after receiving this video evidence on July 10, 2024, Cesar Ramirez called Toni Salinas and imposed a permanent "gag order." Cesar Ramirez instructed Toni Salinas not to communicate directly with any of the mechanics about work-related matters anymore and to channel all repair and safety communications solely through him. The imposed "gag order" was an adverse employment action that interfered with Plaintiff's job duties to verify and track necessary repairs and safety protocols and was imposed immediately and only after Toni Salinas reported discrimination to the City of Kermit's upper management; and thus, the City of Kermit and its upper management's adverse employment action upon Plaintiff supports a disparate treatment claim under Title VII.

**e. Meeting the Employer's Expectations**

Furthermore, text message records from July 12 through 16, 2024, document Toni Salinas' diligent attempts to comply with this new, unsafe protocol(s) while simultaneously raising concerns about her inability to verify or track necessary repairs. In doing so, Plaintiff created a contemporaneous record of the safety hazards created by Cesar Ramirez's "gag order;" and thus, Plaintiff has tangible proof the employment action was adverse and impacted her daily job duties and safety and while meeting the legitimate expectations of the City of Kermit and upper management.

**f. Different Treatment Compared to Others Outside the Protected Class**

To date, none of the younger male mechanics have been interviewed, investigated, reprimanded, written-up, demoted, suspended, or terminated by city management regarding Plaintiff's report and video evidence of discrimination and harassment to her superiors. Also, there has been no changes to policy, no public announcements, and no extra training.

However, Plaintiff's "gag order" remained in effect and with her safety continually compromised as evidenced five days later on July 15, 2024, when the air brakes failed on her work truck due to all six of the truck's slack adjusters being suspiciously backed off, an improbability, while she was hauling a 13-ton load. The truck had to be towed.

The City of Kermit and upper management knew only the mechanics have access to Toni Salinas' sanitation work truck air brakes system, and yet with reckless disregard, not one of the younger male mechanics were interviewed, investigated, reprimanded, written-up, demoted, suspended, or terminated by city management regarding Plaintiff's catastrophic brake failure. To date, there has been no changes to policy, no new safety protocols implemented, no public announcements, no extra training for the mechanics, and no police report filed regarding the brakes failing under suspicious circumstances.

Note that Juan Jaime Ramos was both the Assistant City Manager and Chief of Police at the time of this incident, and even he did not initiate any type of internal or criminal investigation. Thus, Toni Salinas was treated differently than the other younger male employees after reporting discrimination and harassment to her superiors and after the brake failure on her work truck. The fact nothing was ever done neither to stop the discrimination and harassment nor to get to the truth behind the catastrophic brake failure on the truck, further supports Plaintiff's claim(s) of employment discrimination and reckless disregard for Toni Salinas' safety in the workplace by the City of Kermit and its upper management.

**g. Adverse Employment Action – Disciplinary Write-Up**

On September 4, 2024, her superiors issued Toni Salinas a disciplinary write-up for an incident that was, in fact, caused by a documented, pre-existing hydraulic leak on the truck, not operator negligence. Again, the younger male mechanics did not properly maintenance or make necessary repairs on the vehicle before releasing it to Plaintiff to drive and operate. In

spite of documented proof of the pre-existing hydraulic leak, Toni Salinas' superiors held her accountable instead of the mechanics. To date, none of the younger male mechanics have been interviewed, investigated, reprimanded, written-up, demoted, suspended, or terminated by city management. The disciplinary write-up was yet another adverse employment action taken against Toni Salinas by the City of Kermit and its upper management; and thus, as such, supports a disparate treatment claim under Title VII.

**h. Adverse Employment Action – Termination of Employment "For Cause"**

On June 30, 2025, Toni Salinas' assigned sanitation work truck suffered a legitimate mechanical failure, which she documented in her mandatory Driver Vehicle Inspection Report (DVIR) as required by the City of Kermit's department policy. Less than 24 hours later, on July 1, 2025, the City of Kermit and City Manager Mike Arismendez terminated her employment allegedly "for cause."

The termination letter, authored and signed by Juan Jaime Ramos, was based on "for cause" with a series of false allegations:

a. Fabricated Disciplinary History - The letter falsely alleged Toni Salinas had write-ups dating back to February 13, 2013, a factual impossibility, as she was not hired until October 2, 2023.

b. Misattributed Property Damage - The letter falsely claimed Toni Salinas caused an estimated $48,650.00 in damages. Documents later obtained via Freedom of Information Act (FOIA) prove this amount includes numerous incidents of significant damage caused by other male truck drivers that were knowingly and falsely attributed to Toni Salinas.

c. False "Failure to Report" - The letter falsely cited an "unreported" damage incident from June 2025. This was the same incident that Toni Salinas had properly reported on May 30, 2025.

**i. McDonnell Douglas Standard**

"Texas courts follow the settled approach of the U.S. Supreme Court in recognizing two alternative methods of proof in discriminatory treatment cases." *Mission Consol. Indep. Sch. Dist. v. Garcia* , 372 S.W.3d 629, 634 (Tex. 2012). The first method, rather straightforward, involves proving discriminatory intent via direct evidence of what the defendant did and

said. However, the High Court recognized that motives are often more covert than overt, making direct evidence of forbidden animus hard to come by. So to make matters easier for discrimination plaintiffs, the Court created the burden-shifting mechanism of *McDonnell Douglas*. Under this framework, the plaintiff is entitled to a presumption of discrimination if she meets the "minimal" initial burden of establishing a prima facie case of discrimination. *Id.* (internal citations omitted).

Under the *McDonnell Douglas* framework and our case law, the precise elements of this prima facie showing vary depending on the circumstances. *Id.* For Rincones to prevail here, he must first establish a prima facie case of race or national-origin discrimination by showing: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) WHM gave preferential treatment to a similarly situated employee outside the protected class. *See McDonnell Douglas Corp. v. Green* , 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973) (providing the seminal framework); *AutoZone, Inc. v. Reyes* , 272 S.W.3d 588, 592 (Tex. 2008) (per curiam) (adopting the framework). The U.S. Supreme Court has emphasized that the standard for establishing a prima facie case is "not onerous." *Young v. United Parcel Serv., Inc.* , —— U.S. ——, 135 S. Ct. 1338, 1354, 191 L.Ed.2d 279 (2015).

"Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez* , 177 S.W.3d 915, 917 (Tex. 2005) (per curiam).

A plaintiff may prove a claim of intentional discrimination by either direct or circumstantial evidence. *Garcia*, 372 S.W.3d at 634. A plaintiff demonstrates discrimination by circumstantial evidence pursuant to the modified burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802-04 (1973). Under this framework, a plaintiff is entitled to a presumption of discrimination if he meets an initial burden of establishing a prima facie case of discrimination. *Id.*

Here, Toni Salinas was a female and member in a protected class, sex (gender); she was qualified for the position and was meeting the expectations of the City of Kermit and upper management but for the fabricated disciplinary history, misattributed property damage, and false

"failure to report" by which Plaintiff has evidence to contradict each allegation; Plaintiff suffered adverse employment actions with management's dismissal(s) of her reports of safety equipment hazards and unsafe practices, reckless disregard of her reports of discrimination and harassment, imposed a permanent "gag order" only on her, disciplinary write-up for a documented, pre-existing hydraulic leak that was not operator negligence, and employment termination allegedly "for cause;" and similarly situated individuals who were outside of Plaintiff's protected class, younger male employees, were treated more favorably and often by the same supervisor, Cesar Ramirez. Thus, Toni Salinas experienced discrimination in the workplace by the City of Kermit and upper management in direct violation of Title VII, and such is corroborated by a co-worker, Jimmy Harris, who personally witnessed incidents of harassment and hostility directed at Toni Salinas by the younger male employees and supervisory personnel.

**(B) Harassment (Hostile Work Environment)**

Workplace harassment constitutes a form of discrimination under Title VII when it is based on a protected characteristic and creates an abusive environment. Harassment can be categorized as quid pro quo or a hostile work environment. A hostile work environment is created when the discriminatory conduct is so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive atmosphere.

Toni Salinas was treated differently by the other younger male employees in the department, specifically the male mechanics, which she had to interact with on a daily basis. Toni Salinas attempted to track, verify, and document repairs on her sanitation work truck with the younger male mechanics, because she kept having different mechanical and hydraulic issues with the vehicle. While tracking, verifying, and documenting repairs, Toni Salinas was subjected to ongoing harassment by the younger male mechanics, creating over time a very hostile work environment.

Specifically, the mechanics would ignore her when she came in to check on the status of her sanitation work truck repairs. If they didn't ignore her, the men would be dismissive and sarcastic with her. Most of the time, they would return her truck and state it was repaired and ready to go only to find out that nothing had been done. The same problem still existed with the truck. Her vehicle was always breaking down, but instead of fixing the problem, the mechanics

would wait and report to her superiors that it was operator negligence and her inability to keep up with the maintenance of the vehicle.

The younger male mechanics kept escalating to the point that they started bad mouthing her both to her face and behind her back. They laughed at her and cracked jokes at her expense. It got to a point where none of them would do repairs on her sanitation work truck. It was severe and pervasive enough that it started altering the conditions of Plaintiff's workplace of employment. Toni Salinas could not do her job effectively because of the younger male mechanics' harassment verbally and indirectly in them not repairing truck mechanical issues properly and falsely reporting operator negligence to her superiors.

The harassment was subjectively and objectively offensive and severe enough for Toni Salinas to record it and provide video evidence of the harassment which created a hostile work environment by the younger male employees on July 10, 2024, to Cesar Ramirez and Juan Jaime Ramos. In response, Cesar Ramirez imposed a permanent "gag order" on Toni Salinais in which she could no longer communicate directly with any of the mechanics about work-related matters, altering the conditions of Plaintiff's employment. The imposed "gag order" interfered with Plaintiff's job duties to verify and track necessary repairs and safety protocols, thereby continually compromising Toni Salinas' safety as evidenced five days later on July 15, 2024, when the air brakes failed on her work truck while she was hauling a 13-ton load. The truck had to be towed.

The sworn affidavit of Jimmy Harris, a certified semi-truck brake mechanic, confirmed the cause of the brake failure. Mr. Harris attested that upon close inspection, he found all six of the truck's slack adjusters had been backed off, rendering the brakes inoperable. He explained that slack adjusters do not back off on their own, and that the likelihood that all six would be backed off at the same time was highly improbable. Jimmy Harris further attested that when he reported this life-threatening finding to the city's mechanics, he was reprimanded and explicitly instructed not to further assist Toni Salinas.

Hauling a 13-ton load and losing the air braking system on the work truck was indeed life threatening for Toni Salinas. Finding the cause of the brake failure was just as alarming, because the only people with access to the brakes on Plaintiff's truck were the younger male mechanics.

That fact combined with the improbability of all six slack adjusters backed off at the same time on Plaintiff's work vehicle leads to only one logical conclusion and that is one or more of the younger male mechanics tampered with Toni Salinas' work truck brakes; and thus, the younger male mechanics' conduct was so severe or pervasive that it most definitely altered the conditions of the Toni Salinas' employment and created not only an abusive atmosphere but also a life-threatening workplace environment. Thus, Toni Salinas did in fact endure harassment by the younger male employees, creating a hostile work environment under Title VII.

**(C) Retaliation**

Retaliation occurs when an employer takes an adverse action against an employee for engaging in a protected activity under Title VII. The law protects employees who oppose perceived discrimination, such as reporting a supervisor to human resources or the Equal Employment Opportunity Commission (EEOC). This protection applies even if the underlying discrimination claim is ultimately found to be unsubstantiated, provided the complaint was made in good faith. An adverse action in the context of retaliation is defined broadly as any action that would dissuade a reasonable worker from making or supporting a charge of discrimination. The retaliatory action does not have to be related to the terms of employment, meaning actions outside the workplace can still qualify if they are materially adverse.

To establish a prima-facie case of retaliation, employees must show that (1) they engaged in an activity protected under the law, (2) they experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Alamo Heights ISD,* 544 S.W.3d at 782. According to the Fifth Circuit, all a plaintiff must show to establish a prima facie causal link is that the protected activity and the adverse action are "not wholly unrelated." *See Medina v. Ramsey Steel Co*., 238 F.3d 674, 684 (5th Cir. 2001). There are two main ways: (1) temporal proximity, (2) knowledge of the protected activity by the person who took the adverse action or recommended the adverse action. *See Teague v. Williamson County*, No. 1:18-cv-1098-RP, 2020 WL 2542869, at *13 (W.D. Tex. May 5, 2019).

In June of 2024, Toni Salinas engaged in a protected activity of reporting sex (gender) discrimination, age discrimination, and harassment severe enough to create a hostile work environment to Cesar Ramirez and Juan Jaime Ramos and provided video evidence to support

her claims on July 10, 2024. The video footage documented the ongoing discrimination, harassment, and hostility by the younger male employees.

In response, the City of Kermit through the City Manager Mike Arismendez, Assistant City Manager and Chief of Police Juan Jaime Ramos, and Director of Public Works Cesar Ramirez, acting under color of state law, subjected Toni Salinas to a campaign of adverse employment actions, including an imposed permanent “gag order” that continually compromised Plaintiff’s safety; a disciplinary write-up for an incident that was, in fact, caused by a documented, pre-existing hydraulic leak on the truck, not operator negligence; and ultimately, a termination of employment less than 24 hours after Plaintiff’s sanitation work truck suffered a legitimate mechanical failure, which she documented in her mandatory Driver Vehicle Inspection Report (DVIR) as required by department policy on June 30, 2025.

Defendants retaliated against Toni Salinas for reporting significant equipment safety hazards and sex/gender and age discrimination, harassment, and a hostile work environment by: imposing a permanent “gag order,” treating her differently from the other younger male employees in the department, harassing Toni Salinas with false disciplinary write-ups, terminating her employment, immediately replacing her with a younger male truck driver, providing a termination letter based on a series of false allegations - fabricated disciplinary history, misattributed property damage, and a false “failure to report,” actively concealing evidence, and denying her procedural due process in direct conflict with the city’s own policies and procedures.

The proffered reasons for her termination were a pretext for unconstitutional retaliation under Title VII, and her “protected activities” were a motivating factor in the decision to terminate her employment in the context of retaliation under Title VII.

**Cause II: Age Discrimination in Employment Act (ADEA) § 1625.2**

It is unlawful for an employer to discriminate against an individual in any aspect of employment because that individual is 40 years old or older, unless one of the statutory exceptions applies. Favoring an older individual over a younger individual because of age is not unlawful discrimination under the ADEA, even if the younger individual is at least 40 years old.

"To establish a prima facie case of age discrimination, we hold that a plaintiff in a true replacement case must show that he or she was (1) a member of the protected class, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) replaced by someone younger." *Mission Consol. Indep. Sch. Dist. v. Garcia* , 372 S.W.3d 633 (Tex. 2012).

Under the *McDonnell Douglas* test, a plaintiff can prove his or her case by showing that he or she is within the protected age group; that he or she was doing satisfactory work; that he or she was discharged despite the adequacy of his or her work; and that the position was filled by employees younger than the age of the plaintiff.

Here, Toni Salinas was 66 years of age at the time of termination and is within the protected age group and class. Plaintiff was qualified for the position and was meeting the expectations of the City of Kermit and upper management but for the fabricated disciplinary history, misattributed property damage, and false "failure to report" by which Plaintiff has evidence to contradict each allegation. Defendants subjected Toni Salinas to a campaign of adverse employment actions, including a retaliatory "gag order," a pretextual write-up, and ultimately, termination of her employment.

After termination and within 24 hours, Toni Salinas was replaced by a much younger male truck driver with less experience. Because Toni Salinas was within the protected class, qualified for the position and doing satisfactory work but for the false allegations, terminated, and replaced by someone younger, the City of Kermit and upper management's adverse actions towards Plaintiff were based on sex (gender) discrimination under Title VII and age discrimination under the ADEA as evidenced by her replacement of a young male truck driver with less experience in less than 24 hours of her termination.

**Cause III: 42 U.S.C. § 1983 – Fourteenth Amendment**

**(Denial of Procedural Due Process Violations)**

SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

(1) Notice. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).* See also *Richards v. Jefferson County, 517 U.S. 793 (1996) (res judicata may not apply where taxpayer who challenged a county's occupation tax was not informed of prior case and where taxpayer interests were not adequately protected).*

(2) Hearing. "[S]ome form of hearing is required before an individual is finally deprived of a property [or liberty] interest." *Mathews v. Eldridge, 424 U.S. 319, 333 (1976). "Parties whose rights are to be affected are entitled to be heard." Baldwin v. Hale, 68 U.S. (1 Wall.) 223, 233 (1863).*

(3) Impartial Tribunal. Just as in criminal and quasi-criminal cases,[762] an impartial decisionmaker is an essential right in civil proceedings as well. *Goldberg v. Kelly, 397 U.S. 254, 271 (1970).*

(4) Confrontation and Cross-Examination. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly, 397 U.S. 254, 269 (1970). See also ICC v. Louisville & Nashville R.R., 227 U.S. 88, 93–94 (1913). Cf. § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d).*

(5) Discovery. The Court has never directly confronted this issue, but in one case it did observe in *dictum* that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.*" Greene v. McElroy, 360 U.S. 474, 496 (1959), quoted with approval in Goldberg v. Kelly, 397 U.S. 254, 270 (1970).*

(6) Decision on the Record. Although this issue arises principally in the administrative law area, it applies generally. "[T]he decisionmaker's conclusion . . . must rest solely on the legal rules and evidence adduced at the hearing. *The exclusiveness of the record is fundamental in administrative law. See § 7(d) of the Administrative Procedure Act, 5 U.S.C. § 556(e). However, one must show not only that the agency used ex parte evidence but that he was prejudiced thereby. Market Street R.R. v. Railroad Comm'n, 324 U.S. 548 (1945) (agency decision supported by evidence in record, its decision sustained, disregarding ex parte evidence).*

(7) Counsel. In *Goldberg v. Kelly*, the Court held that a government agency must permit a welfare recipient who has been denied benefits to be represented by and assisted by counsel. *397 U.S. 254, 270–71 (1970).*

At-will "Public employees have a property interest in continued employment if the government has agreed to fire them only 'for cause'" [and] are entitled, under the Due Process

Clause of the Fourteenth Amendment," *Gilbert v. Homar,* 520 U.S. 924, 928-29, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538-39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *City of Odessa v. Barton,* 967 S.W.2d 834, 835 (Tex.1998); *Bexar County Sheriff's Civil Serv. Comm'n v. Davis,* 802 S.W.2d 659, 661 n. 2 (Tex.1990) Here, Defendants provided Plaintiff a termination letter with "for cause" - Disciplinary History, Property Damage, and "Failure to Report."

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original); see *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth,* 408 U.S., at 569-570, 92 S.Ct., at 2705; *Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972)."

The City of Kermit Personnel Manual includes on page 60, Section 5-23 Corrective Action, Appeals & Discharge. If the City of Kermit need not have a reason for its decisions, what is the point of including the option for appeal? The right of appeal assumes something to appeal from … requiring an evidentiary hearing.

"Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. . . ." *County of Dallas v. Wiland*, 216 S.W.3d 344 (2007)." In this case, if Plaintiff had been allowed to prove that if notice and a proper hearing had been held by Defendants and the Kermit City Council, Toni Salinas would not have been terminated "for cause." Plaintiff had verifiable and tangible evidence to confirm that the disciplinary history was fabricated; the property damage of $48,650.00 was misattributed to her; and the "failure to report" was false.

Because Defendants terminated Plaintiff "for cause," an at-will public employee, she has a property interest in continued employment which triggered procedural due process and a constitutionally-protected right to notice and a hearing prior to termination under the Fourteenth Amendment.

On June 30, 2025, Toni Salinas' assigned sanitation work truck suffered a legitimate mechanical failure, which she documented in her mandatory Driver Vehicle Inspection Report (DVIR) as required by department policy. Less than 24 hours later, on July 1, 2025, the City of Kermit terminated her employment claiming.

The termination letter, authored and signed by Juan Jaime Ramos, was based on "for cause" with a series of false allegations:

a. Fabricated Disciplinary History - The letter falsely alleged Toni Salinas had write-ups dating back to February 13, 2013, a factual impossibility, as she was not hired until October 2, 2023. Over the course of her employment with the City of Kermit, Toni Salinas had a total of four (4) write-ups at the time of termination:

i. Self-reported Non-monetary write-up – not driver negligence but learning new route and sanitation work truck nuances.
ii. On September 4, 2024, caused by a documented, pre-existing hydraulic leak on the truck, not operator negligence.
iii. On September 9, 2024, Toni Salinas did not report equipment failure due to her inability to detect the failure and received a disciplinary write-up and a 90-day probation.
iv. On June 30, 2025, Toni Salinas received a write-up due to a "failure to report" mechanical failure (PTO was out of service in the truck (24-1). However, Plaintiff had timely reported the failure to Mechanic David Tate in the yard.

If there had been more write-ups, Toni Salinas should have been put on notice by the City of Kermit and upper management.

b. Misattributed Property Damage - The letter falsely claimed Toni Salinas caused an estimated $48,650.00 in damages. Documents later obtained via Freedom of Information Act (FOIA) prove this amount includes numerous incidents of significant damage caused by other male truck drivers that were knowingly and falsely attributed to Toni Salinas. Comparing the time sheets, GPS tracking on the sanitation work trucks, and the filed insurance claims required to the dates of each incident will prove that Plaintiff was either not yet hired or off duty or another younger male truck driver was driving her truck and/or route at the time damages were incurred

c. False "Failure to Report" - The letter falsely cited an "unreported" damage incident from June of 2025. This was the same incident that Toni Salinas had properly reported on June 30, 2025, and she has documentation time-stamped to support such.

i. According to the Personnel Policy for the City of Kermit, page 27, section 43, "All accidents involving city vehicular equipment must be reported immediately. Failure to report any accident, however minor, or to comply with the following accident procedure, may result in disciplinary action."

ii. According to the Personnel Policy for the City of Kermit, page 27, section 43(A)(8), "Notify your immediate supervisor and complete an accident report immediately upon your return to your department."

Toni Salinas was very aware of the Personnel Policy for the City of Kermit and followed both policies and procedures and has copies via email or text of each report made during her employment with the City of Kermit.

Less than 24 hours after Toni Salinas' termination, the City of Kermit hired a new sanitation truck driver to replace her. This new driver was a young male with no prior experience driving trucks. Note that the City of Kermit interviews, fingerprints, runs a background check, and drug tests potential new employees and drivers before hiring them; and thus, the hiring process takes a minimum of three to five business days to complete if not longer. To hire a young male truck driver within 24 hours of Toni Salinas' termination, the City of Kermit and upper management would have needed to start interviewing potential replacement drivers at least three days prior in anticipation of Plaintiff's termination by the city, making the "for cause" of "failure to report" pre-textual and false.

According to the Personnel Policy for the City of Kermit, page 32, Section 47 Cause for Dismissal (U), "Any employee who believes he/she has been unfairly terminated may have the right to utilize the Grievance Procedure, as set out in Section 46 herein." Here, Toni Salinas believes she has been unfairly terminated based on pre-textual "for cause," fabricated discipline history, misattributed property damage, and a false "failure to report."

According to the Personnel Policy for the City of Kermit, page 29, Section 46 – Complaints and Grievance Procedure:

"A. An employee who believes he/she has been unfairly treated, or wishes to correct a misunderstanding, or desires information concerning his work relationship will have the

right, with or without his representative, to discuss such matters with his immediate Supervisor or higher levels of supervision, if he so desires.

1. An employee shall first discuss his complaint with his/her Supervisor and Department head in a joint meeting within seven (7) calendar days of the occurrence of the problem, in an attempt to reach a satisfactory solution. The decision of the Department head shall be made in writing within five (5) calendar days.

2. A complaint or grievance not satisfactorily resolved in Step I may be appealed, in writing, by the employee to an employee grievance committee through the City Manager within five (5) calendar days of the previous decision in Step l. In a joint meeting, scheduled within seven (7) calendar days of receipt of written grievance appeal by the City Manager, the grievance will be discussed with all concerned and a decision rendered in writing within five (5) calendar days.

3. If unable to affect a satisfactory solution to a complaint or grievance, final appeal shall be made in writing to the City Manager within five (5) calendar days of the decision of Step 2. The City Manager shall render a decision in writing on the problem within five (5) calendar days; such decision shall be final and binding on all parties.

4. A copy of all written grievance appeals shall be delivered or submitted in person to the Mayor and City Council by the City Manager within twenty-four (24) hours of receipt. The written decisions shall be mailed as they become available.

5. The employee grievance committee shall consist of any three (3) employees occupying the following positions: Chief of Police; Police Captain; Water and Sewer Supervisor; Chief Dispatcher and Senior Clerk Utility Office. The appealing employee's Department Head and/or Supervisor shall be excluded. The three (3) employees to sit on the committee shall be drawn by lot by the employee filing such grievance. The first three (3) names drawn shall comprise the committee, with the remaining employees to serve as alternates."

Toni Salinas should have been allowed to access and utilize the Grievance Procedure, as set out in Section 46 of the Personnel Policy for the City of Kermit, page 29. However, the City of Kermit, the city's upper management, and the Kermit City Council continually denied Plaintiff her procedural due process under the Fourteenth Amendment, violating and invalidating the City of Kermit's own personal policies and procedures in the process and reaffirming Toni Salinas was treated differently and less favorable than other similarly situated younger male employees by the City of Kermit and upper management.

Upon review of the termination letter, documented by video evidence, when Toni Salinas asked to see the evidence supporting the alleged $48,650.00 in damages, Mike Arismendez, the City Manager, personally and physically removed the invoice from Toni Salinas' view, denying her proper notice and tangible proof of the damages misattributed to her.

Mike Arismendez actively concealed the evidence and instructed Plaintiff that her only recourse was to file an open records request to see the very documents being used to end her career. At the time of termination, Toni Salinas was 66 years old. Plaintiff was planning to retire with the city at 70 years of age. To date, Plaintiff has been unable to secure gainful employment due to her age and 30 plus years of experience.

On July 3, 2025, just two days after Toni Salinas' termination and the denial of access to her employee file by the City Manager, Toni Salinas formally submitted a Freedom of Information Act (FOIA) / Texas Public Information Act (TPIA) request for her complete personnel file and all documents related to the alleged damages.

The City of Kermit did not respond and release the documents to Plaintiff until July 22, 2025, a 19-day delay which obstructed Toni Salinas' ability to mount a timely and effective rebuttal to the "for cause" and false allegations. Pursuant to Section 46 of the Grievance Procedure, Toni Salinas only had 7 days in which to discuss her complaint and grievance with her immediate supervisor, a procedural impossibility due to the City Manager Mike Arismendez's intentional due process interference in refusing to release the relevant documents and forcing Plaintiff to file an FOIA. Then, the City of Kermit's 19-day delay in releasing the relevant documents constructively and actually denied Toni Salinas' procedural due process and a constitutionally-protected right to notice and a hearing after termination.

Upon receiving the file, Toni Salinas reviewed and discovered the misattributed damage reports. Plaintiff then requested all investigative and damage reports related to the alleged $48,650.00 in damages.

In response, Cesar Ramirez sent *Certified Letter #7019 0700 0001 1474* 9529, in which he admitted that the City of Kermit possessed "no written record" of the incidents or the dates of the alleged damages. Cesar Ramirez further admitted he had only received "phone calls" regarding the incidents. This letter of admission is in direct contradiction to the Plaintiff's

termination letter and the City of Kermit's "for cause" justification and unproven, false allegations..

According to the Personnel Policy for the City of Kermit, page 27, Section 43, "All accidents involving city vehicular equipment must be reported immediately. Failure to report any accident, however minor, or to comply with the following accident procedure, may result in disciplinary action."

According to the Personnel Policy for the City of Kermit, page 27, Section 43(A)(8), an employee must "Notify your immediate supervisor and complete an accident report immediately upon your return to your department."

According to the Personnel Policy for the City of Kermit, page 27, Section 43(B), "After an employee reports a motor vehicle incident, it shall be the direct responsibility of the Supervisor in charge of such employee to see that an accident report is immediately prepared, containing how, where and when the accident occurred together with all pertinent information available. Said report shall also contain the names and addresses of all witnesses that were at the scene of said accident. All accident reports shall be transmitted to the City Manager's office not later than twenty-four (24) hours after occurrence thereof."

Cesar Ramirez admitted that the City of Kermit possessed "no written record" of the incidents or the dates of the alleged damages. Cesar Ramirez further admitted he had only received "phone calls" regarding the incidents. Thus, Cesar Ramirez did not require each employee to prepare an accident report containing how, where and when the accident occurred together with all pertinent information available as specified in the Personnel Policy for the City of Kermit, page 27, section 43(B), as evidenced by his admission of "no written record."

If the City of Kermit possessed "no written record" of the incidents or the dates of the alleged damages, then City Manager Mike Arismendez did not require each Supervisor to see that accident reports are immediately prepared, containing how, where and when the accident occurred together with all pertinent information available as specified in the Personnel Policy for the City of Kermit, page 27, section 43(B), as evidenced by "no written record."

According to the Personnel Policy for the City of Kermit, page 28, Section 44 – Motor Vehicle Accident Review (C), “An employee who believes he/she has been unfairly treated shall have the right to appeal through the established grievance procedure.”

According to the Personnel Policy for the City of Kermit, page 27, section 44, “The purpose of the motor vehicle accident review is to assist in the development of safer driving practices by employees of the City. Department Heads shall be responsible for review of all within their departments.”

As a Department Head, Cesar Ramirez did not schedule or prepare or oversee the required motor vehicle accident reviews with employees to assist in the development of safer driving practices by employees of the City of Kermit as specified in the Personnel Policy for the City of Kermit, page 27, section 44, as evidenced by his own admission of “no written record.”

As City Manager, Mike Arismendez did not oversee or require all Department Heads to perform a motor vehicle accident reviews with employees to assist in the development of safer driving practices by employees of the City of Kermit as specified in the Personnel Policy for the City of Kermit, page 27, section 44, as evidenced by “no written record.”

According to the Personnel Policy for the City of Kermit, page 28, section 44(A), “Should the Department Head determine that the accident was caused by the negligence of the City employee, any of the following disciplinary actions may be taken: 1) Letter of reprimand to the employee and a copy placed in the employee’s personnel file; 2) Suspension without pay for any period not to exceed ten (10) working days; 3) Demotion in classification or pay, or both; 4) Permanently removed for the operation of any motor vehicle belonging to the City; 5) Dismissal; and 6) Other action as may be deemed appropriate by the Department Head, provided prior approval is given by the City Manager.”

Here, the City of Kermit and upper management did not follow the city’s policy and procedure for city employee motor vehicle accidents as evidenced by Cesar Ramirez’s admission of “no written record” in his *Certified Letter #7019 0700 0001 1474* 9529, and in so doing deprived Toni Salinas of a property interest in continued employment, invoking procedural due process and a constitutionally-protected right to notice and a hearing prior to termination under the Fourteenth Amendment, especially when considering the City of Kermit through Cesar

Ramirez had been interviewing younger male replacement drivers for at least three days prior to Plaintiff's termination.

On September 2, 2025, Toni Salinas sent a formal demand letter for an investigation via certified mail. On September 15, 2025, the City of Kermit, through Mike Arismendez, provided its official response via *Certified Letter #7022 3330 0000 2338 1056*, unequivocally stating, "There will be no investigation." This official refusal to investigate in the face of direct contradictory tangible evidence constitutes a procedural due process violation and an intentional interference in Toni Salinas' property right of continued employment and is a direct act of ratification of the unconstitutional conduct by the City of Kermit's Manager and Executive Policymaker, Mike Arismendez.

On September 17, 2025, Plaintiff also sent *Certified Letter #70222410000253478166* directly to Juan Jaime Ramos, the author of the termination letter. In this correspondence, Toni Salinas formally demanded the retraction of the defamatory causes for her termination and rebutted the false allegations regarding the $48,650.00 in damages with specific facts identifying the responsible parties. Juan Jaime Ramos did not respond to this letter.

On October 23, 2025 and November 20, 2025, Toni Salinas presented her evidence to the Kermit City Council at a public meeting, since she had been denied the right to the Section 46 Grievance Procedure and the opportunity to be heard at an employee grievance committee hearing. This evidence included signed, sworn affidavits containing the facts of collusion amongst management. To date, neither the Kermit City Council nor any other City Official has rebutted the sworn testimony contained in those affidavits.

On November 22, 2025, Plaintiff sent *Certified Mail #9589071052702825654168* to the City of Kermit, formally demanding the removal of the false records from her personnel file and making a new TPIA request for any documents related to corrections or updates made in response to her evidence. This formal demand for a name-clearing/defamatory remedy was met with no response from any City Official, further cementing the city-wide ratification of city management misconduct.

In December of 2025 and January of 2026, Toni Salinas sent a final formal Notice of Claim and Intent to Sue via certified mail to City Manager Mike Arismendez (*Certified Letter*

*#9589 0710 5270 2825 6542 12*), City Attorney Slater Elza (*Certified Letter #9589 0710 5270 25825 6541 75*), and Mayor David Holbrook (*Certified Letter #7022 2410 0002 5347 8043*). No substantive response was ever received.

Having exhausted all internal remedies and been denied her procedural due process by the City of Kermit, Toni Salinas sought review from the Winkler County District Attorney's Office regarding the falsifying of government records, a criminal offense with no legal remedy in civil litigation.

On January 21, 2026, Plaintiff received a *Certified Letter #9589 0710 5270 2825 6459 51* from the District Attorney's Office, declining to pursue the matter and stating that it was a "civil issue."

As a public employee, Plaintiff possessed a constitutionally protected property interest in her continued employment. The City of Kermit and upper management, acting under color of state law, deprived Plaintiff of this interest without due process of law. Defendant(s) failed to provide adequate pre-termination notice of the alleged charges against her and a meaningful opportunity to be heard. This violation began with “no vehicle incident reports and reviews” to support “for cause” and false allegations and at the moment of the termination itself, as documented by video evidence showing City Manager Mike Arismendez actively concealing the evidence against Plaintiff, which continued through the post-termination period where she was denied any meaningful opportunity to be heard before an impartial employee grievance hearing or city council or to clear her name of the false and stigmatizing charges published in her personnel file. Thus, Defendants violated Toni Salinas’ Fourteenth Amendment right to her property interest in continued employment and without procedural due process of law.

**Cause IV: Violations of Texas Open Meetings Act (TOMA) –**

**Chapter 551 of the Government Code**

The Texas Open Meetings Act (TOMA) is found in chapter 551 of the Government Code. The TOMA works to protect the public’s interest in knowing what a governmental body (e.g., a city council) decides and how and why a body reaches a decision. To that end, the general rule is that every regular, special, or called meeting of a governmental body, including a

city council and some boards and commissions (depending on membership and authority), must be open to the public and comply with the requirements of the TOMA.

On October 23, 2025, and November 20, 2025, Toni Salinas presented her evidence to the Kermit City Council at a public meeting. Toni Salinas was denied the opportunity to be heard by the Kermit City Council for the termination or to clear her name of the false and stigmatizing charges published in her personnel file.

Kermit's final legislative policymaker, the Kermit City Council, was subsequently presented with direct, sworn, and unrebutted evidence of the misconduct and, with deliberate indifference, ratified the entire course of conduct of Defendants by failing to provide any procedural due process remedy, investigate and correct the false records, or follow its own mandatory grievance procedures as found in Section 46 of the Personnel Policy for the City of Kermit, page 29. Thus, the Kermit City Council, as the final policymakers, adopted and condoned the unconstitutional termination by Defendants as the official policy of the City of Kermit and refused to allow Plaintiff to plead her case.

To date, neither the Kermit City Council nor any other City Official has rebutted the sworn testimony contained in those affidavits. The TOMA works to protect the public's interest in knowing what a governmental body (e.g., a city council) decides and how and why a body reaches a decision. By not allowing Toni Salinas to be heard regarding her termination, the public's interest was unaware of what the City of Kermit and upper management were making decisions not based on policy and procedure but discriminatory violations and unconstitutional misconduct by the governmental body; and thus, the City of Kermit, upper management, and the Kermit City Council are in violation of TOMA.

**Cause VI: Municipal Liability Under *MONELL* (42 U.S.C. § 1983)**

In its landmark decision, *Monell v. Department of Social Services*, the Supreme Court held that municipal entities are subject to § 1983 liability, but not on the basis of respondeat superior. Therefore, a municipality may not be held liable under § 1983 solely because it hired an employee who became a constitutional wrongdoer. *MONELL* established that a municipality is subject to liability under § 1983 only when the violation of a plaintiff's federally protected rights can be attributable to the enforcement of a municipal policy, practice, or decision of a final

municipal policy maker. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

To establish a municipality's liability for a § 1983 claim under *MONELL*, a plaintiff must plead a deprivation of a constitutional right and also plead and prove: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); see also *Hicks v. LeBlanc*, 81 F.4th 497, 503 n.14 (5th Cir. 2023)). A plaintiff must also prove that the municipality acted with "deliberate indifference" to the "known or obvious consequences" of its actions. *Bd. of Cnty. Comm'rs of Bryan Cnty. Okl. v. Brown*, 520 U.S. 397, 407 (1997) (citations omitted). A showing of negligence is insufficient to establish a municipality's liability. *Id.*

The City of Kermit operates under a home rule charter, allowing local governance. The charter outlines the structure of the city government, including the mayor and council. It defines the powers and responsibilities of city officials and departments.

The City of Kermit operates under a Mayor-Council system, where the mayor is the chief executive. The City Council consists of elected members who make legislative decisions. The city manager oversees daily operations and implements council policies. Various departments handle specific functions, such as public safety, utilities, and public works. Regular council meetings allow for community input and transparency in governance. Local ordinances and regulations are established to address community needs and concerns.

As the City Manager, Mike Arismendez:

(a) implements policies set by the city council;

(b) provides recommendations based on research and community needs;

(c) oversees daily operations and ensures compliance with policies;

(d) may influence policy through budget proposals and strategic planning; and

(e) has the authority to make administrative decisions.

In support of Plaintiff's claim of *MONELL*, Toni Salinas allege that: (a) her constitutional and federally protected right to report discrimination, harassment creating a hostile work environment, and equipment safety hazard concerns were violated and caused by the official policies, customs, and procedures of the City of Kermit and as implemented by the City Manager, Mike Arismendez; (b) The City of Kermit is liable because its final policymakers, with deliberate indifference to Toni Salinas' rights, ratified the unconstitutional conduct, making it an official city policy; (c) Assistant City Manager and Chief of Police, Juan Jaime Ramos, drafted and signed the termination letter ratifying the termination letter "for cause;" (d) Director of Public Works Cesar Ramirez made a deliberate choice to ratify the unconstitutional "gag order," procedural due process with employee accident reports and reviews not completed but misattributed damages to Plaintiff anyway, and denial of notice and hearing through the city's grievance procedures prior to termination; e) the City Manager, Mike Arismendez, made a deliberate choice to ratify the unconstitutional termination in *Certified Letter #7022 3330 0000 2338 1056* by officially and definitively refusing to conduct any investigation into Toni Salinas' well-documented claims of fabricated evidence.

A single act by the City Manager, alone, who implements policies, overseas daily operations, and ensures compliance with such policies, directly caused the ongoing constitutional harm and is attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policy maker and was assisted to do so by the Assistant City Manager and Director of Public Works.

Upon review of the termination letter and documented by video evidence, when Toni Salinas asked to see the evidence supporting the alleged $48,650.00 in damages misattributed to her, Mike Arismendez, the City Manager, personally and physically removed the invoice from Toni Salinas' view.

In so doing, the City's Manager and final policymaker, Mike Arismendez, made a deliberate choice to actively conceal the evidence Plaintiff needed to defend against "for cause" and false allegations at termination and constructively depriving Plaintiff of utilizing the city's grievance procedures. The City Manager instructed Plaintiff that her only recourse was to file an open records request to see the documents. Mike Arismendez ratified the unconstitutional interference of procedural due process afforded Plaintiff as a terminated employee.

On July 3, 2025, just two days after Toni Salinas' termination and the denial of access to her employee file by the City Manager, Toni Salinas formally submitted a Freedom of Information Act (FOIA) / Texas Public Information Act (TPIA) request for her complete personnel file and all documents related to the alleged damages.

The City of Kermit through its City Manager did not respond and release the documents to Plaintiff until July 22, 2025, a 19-day delay, which obstructed Toni Salinas' ability to mount a timely and effective rebuttal to the false allegations in an employee grievance hearing. By taking 19 days to release documents, the City of Kermit ratified the unconstitutional interference of procedural due process afforded Plaintiff as a terminated employee.

The City's Manager and final policymaker, Mike Arismendez, made a deliberate choice to ratify the unconstitutional termination, itself, in *Certified Letter #7022 3330 0000 2338 1056* by officially and definitively refusing to conduct any investigation into Plaintiff's well-documented claims of fabricated evidence. This single act combined with procedural interference by a City Manager and final policymaker directly caused the ongoing constitutional harm to Toni Salinas.

In further support of Plaintiff's claim of *MONELL*, Toni Salinas alleged that the City of Kermit's final legislative policymaker, the Kermit City Council, was subsequently presented with direct, sworn, and unrebutted evidence of the misconduct and, with deliberate indifference, ratified the entire course of conduct of Defendants by failing to provide any procedural due process remedy, investigate and correct the false records, or follow its own mandatory grievance procedures as found in Section 46 of the Personnel Policy for the City of Kermit, page 29. Thus, the Kermit City Council, as the final policymakers, adopted and condoned the unconstitutional termination by Defendants as the official policy of the City of Kermit.

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that private individuals may directly sue municipalities under § 1983 for constitutional deprivations inflicted upon them pursuant to a governmental custom, policy, ordinance, regulation, or decision.

Upon receiving the file, Toni Salinas reviewed and discovered the misattributed damage reports. Plaintiff then requested all investigative and damage reports related to the alleged $48,650.00 in damages.

In response, Cesar Ramirez sent *Certified Letter #7019 0700 0001 1474* 9529, in which he admitted that the City of Kermit possessed "no written record" of the incidents or the dates of the alleged damages. Cesar Ramirez further admitted he had only received "phone calls" regarding the incidents.

This letter of admission is in direct contradiction to the Plaintiff's termination letter and the City of Kermit's "for cause" justification.

According to the Personnel Policy for the City of Kermit, page 27, section 43, "All accidents involving city vehicular equipment must be reported immediately. Failure to report any accident, however minor, or to comply with the following accident procedure, may result in disciplinary action."

According to the Personnel Policy for the City of Kermit, page 27, section 43(A)(8), "Notify your immediate supervisor and complete an accident report immediately upon your return to your department."

According to the Personnel Policy for the City of Kermit, page 27, section 43(B), "After an employee reports a motor vehicle incident, it shall be the direct responsibility of the Supervisor in charge of such employee to see that an accident report is immediately prepared, containing how, where and when the accident occurred together with all pertinent information available. Said report shall also contain the names and addresses of all witnesses that were at the scene of said accident. All accident reports shall be transmitted to the City Manager's office not later than twenty-four (24) hours after occurrence thereof."

Cesar Ramirez admitted that the City of Kermit possessed "no written record" of the incidents or the dates of the alleged damages. Cesar Ramirez further admitted he had only received "phone calls" regarding the incidents. Evidently, Cesar Ramirez did not require each employee to prepare an accident report containing how, where and when the accident occurred together with all pertinent information available as specified in the Personnel Policy for the City of Kermit, page 27, section 43(B), as evidenced by his admission of "no written record."

If the City of Kermit possessed "no written record" of the incidents or the dates of the alleged damages, then City Manager Mike Arismendez did not require each Supervisor to see that accident reports are immediately prepared, containing how, where and when the accident occurred together with all pertinent information available as specified in the Personnel Policy for the City of Kermit, page 27, section 43(B), as evidenced by "no written record."

According to the Personnel Policy for the City of Kermit, page 27, section 44, "The purpose of the motor vehicle accident review is to assist in the development of safer driving practices by employees of the City. Department Heads shall be responsible for review of all within their departments."

As a Department Head, Cesar Ramirez did not schedule or prepare or oversee the required motor vehicle accident reviews with employees to assist in the development of safer driving practices by employees of the City of Kermit as specified in the Personnel Policy for the City of Kermit, page 27, section 44, as evidenced by his own admission of "no written record."

As City Manager, Mike Arismendez did not oversee or require all Department Heads to perform a motor vehicle accident reviews with employees to assist in the development of safer driving practices by employees of the City of Kermit as specified in the Personnel Policy for the City of Kermit, page 27, section 44, as evidenced by "no written record."

According to the Personnel Policy for the City of Kermit, page 28, section 44(A), "Should the Department Head determine that the accident was caused by the negligence of the City employee, any of the following disciplinary actions may be taken: 1) Letter of reprimand to the employee and a copy placed in the employee's personnel file; 2) Suspension without pay for any period not to exceed ten (10) working days; 3) Demotion in classification or pay, or both; 4) Permanently removed for the operation of any motor vehicle belonging to the City; 5) Dismissal; and 6) Other action as may be deemed appropriate by the Department Head, provided prior approval is given by the City Manager."

The City of Kermit and upper management did not follow the city's policy and procedure for city employee motor vehicle accidents as evidenced by Cesar Ramirez's admission of "no written record" in his *Certified Letter #7019 0700 0001 1474* 9529; and thus, the City of Kermit and upper management, with deliberate indifference, ratified the Personnel Policy for the

City of Kermit, page 27, section 43; section 43(A)(8); section 43(B); section 44; and section 44(A) by failing to provide any procedural due process remedy, investigate and correct the false records, or follow its own mandatory grievance procedures as found in Section 46 of the Personnel Policy for the City of Kermit, page 29. Thus, the City of Kermit, upper management, and the Kermit City Council, as the final policymakers, adopted and condoned and ratified the unconstitutional termination as the official policy of the City of Kermit.

The termination letter, authored and signed by Juan Jaime Ramos, was based on "for cause" with a series of false allegations:

a. Fabricated Disciplinary History - The letter falsely alleged Toni Salinas had write-ups dating back to February 13, 2013, a factual impossibility, as she was not hired until October 2, 2023. Over the course of her employment with the City of Kermit, Toni Salinas had a total of four (4) write-ups at the time of termination:

i. Self-reported Non-monetary write-up – not driver negligence but learning new route and sanitation work truck nuances.
ii. On September 4, 2024, caused by a documented, pre-existing hydraulic leak on the truck, not operator negligence.
iii. On September 9, 2024, Toni Salinas did not report equipment failure due to her inability to detect the failure and received a disciplinary write-up and a 90-day probation.
iv. On June 30, 2025, Toni Salinas received a write-up due to a "failure to report" mechanical failure (PTO was out of service in the truck (24-1). However, Plaintiff had timely reported the failure to Mechanic David Tate in the yard.
.

If there had been more write-ups, Toni Salinas should have been put on notice by the City of Kermit and upper management.

b. Misattributed Property Damage - The letter falsely claimed Toni Salinas caused an estimated $48,650.00 in damages. Documents later obtained via Freedom of Information Act (FOIA) prove this amount includes numerous incidents of significant damage caused by other male truck drivers that were knowingly and falsely attributed to Toni Salinas. Comparing the time sheets, GPS tracking on the sanitation work trucks, and the filed insurance claims required to the dates of each incident will prove that Plaintiff was either not yet hired or off duty or another younger male truck driver was driving her truck and/or route at the time damages were incurred

c. False "Failure to Report" - The letter falsely cited an "unreported" damage incident from June of 2025. This was the same incident that Toni Salinas had properly reported on June 30, 2025, and she has documentation time-stamped to support such.

i. According to the Personnel Policy for the City of Kermit, page 27, section 43, "All accidents involving city vehicular equipment must be reported immediately. Failure to report any accident, however minor, or to comply with the following accident procedure, may result in disciplinary action."

ii. According to the Personnel Policy for the City of Kermit, page 27, section 43(A)(8), "Notify your immediate supervisor and complete an accident report immediately upon your return to your department."

Toni Salinas was very aware of the Personnel Policy for the City of Kermit and followed both policies and procedures and has copies via email or text of each report made during her employment with the City of Kermit. .

Less than 24 hours after Toni Salinas' termination, the City of Kermit hired a new sanitation truck driver to replace her. This new driver was a young male with no prior experience driving trucks. To hire a young male truck driver within 24 hours of Toni Salinas' termination, the City of Kermit and upper management would have needed to start interviewing potential replacement drivers at least three days prior in anticipation of Plaintiff's termination by the city, making the "for cause" of "failure to report" pre-textual and false. Because the city already had a replacement in mind, their motivations to adhere to the City of Kermit's current policies would have thwarted their efforts in terminating Plaintiff and without due process.

According to the Personnel Policy for the City of Kermit, page 32, Section 47 Cause for Dismissal (U), "Any employee who believes he/she has been unfairly terminated may have the right to utilize the Grievance Procedure, as set out in Section 46 herein." Here, Toni Salinas believes she has been unfairly terminated based on pre-textual "for cause," fabricated discipline history, misattributed property damage, and a false "failure to report."

According to the Personnel Policy for the City of Kermit, page 29, Section 46 – Complaints and Grievance Procedure:

"A. An employee who believes he/she has been unfairly treated, or wishes to correct a misunderstanding, or desires information concerning his work relationship will have the

right, with or without his representative, to discuss such matters with his immediate Supervisor or higher levels of supervision, if he so desires.

1. An employee shall first discuss his complaint with his/her Supervisor and Department head in a joint meeting within seven (7) calendar days of the occurrence of the problem, in an attempt to reach a satisfactory solution. The decision of the Department head shall be made in writing within five (5) calendar days.

2. A complaint or grievance not satisfactorily resolved in Step I may be appealed, in writing, by the employee to an employee grievance committee through the City Manager within five (5) calendar days of the previous decision in Step l. In a joint meeting, scheduled within seven (7) calendar days of receipt of written grievance appeal by the City Manager, the grievance will be discussed with all concerned and a decision rendered in writing within five (5) calendar days.

3. If unable to affect a satisfactory solution to a complaint or grievance, final appeal shall be made in writing to the City Manager within five (5) calendar days of the decision of Step 2. The City Manager shall render a decision in writing on the problem within five (5) calendar days; such decision shall be final and binding on all parties.

4. A copy of all written grievance appeals shall be delivered or submitted in person to the Mayor and City Council by the City Manager within twenty-four (24) hours of receipt. The written decisions shall be mailed as they become available.

5. The employee grievance committee shall consist of any three (3) employees occupying the following positions: Chief of Police; Police Captain; Water and Sewer Supervisor; Chief Dispatcher and Senior Clerk Utility Office. The appealing employee's Department Head and/or Supervisor shall be excluded. The three (3) employees to sit on the committee shall be drawn by lot by the employee filing such grievance. The first three (3) names drawn shall comprise the committee, with the remaining employees to serve as alternates."

Toni Salinas should have been allowed to access and utilize the Grievance Procedure, as set out in Section 46 of the Personnel Policy for the City of Kermit, page 29. However, the City of Kermit, the city's upper management, and the Kermit City Council continually denied Plaintiff her procedural due process under the Fourteenth Amendment, violating and invalidating the City of Kermit's own personal policies and procedures in the process and reaffirming Toni Salinas was treated differently and less favorable than other similarly situated younger male employees by the City of Kermit and upper management.

On September 17, 2025, Plaintiff also sent *Certified Letter #70222410000253478166* directly to Juan Jaime Ramos, the author of the termination letter. In this correspondence, Toni Salinas formally demanded the retraction of the defamatory causes for her termination and rebutted the false allegations regarding the $48,650.00 in damages with specific facts identifying the responsible parties. Juan Jaime Ramos did not respond to this letter.

On November 22, 2025, Plaintiff sent *Certified Mail #9589071052702825654168* to the City of Kermit, formally demanding the removal of the false records from her personnel file and making a new TPIA request for any documents related to corrections or updates made in response to her evidence. This formal demand for a name-clearing/defamatory remedy was met with no response from any City Official, further cementing the city-wide ratification of city management misconduct.

In December of 2025 and January of 2026, Toni Salinas sent a final formal Notice of Claim and Intent to Sue via certified mail to City Manager Mike Arismendez (*Certified Letter #9589 0710 5270 2825 6542 12*), City Attorney Slater Elza (*Certified Letter #9589 0710 5270 25825 6541 75*), and Mayor David Holbrook (*Certified Letter #7022 2410 0002 5347 8043*). No substantive response was ever received.

Having exhausted all internal remedies, Toni Salinas sought review from the Winkler County District Attorney's Office regarding the falsifying of government records, a criminal offense with no legal remedy in civil litigation. On January 21, 2026, Plaintiff received a *Certified Letter #9589 0710 5270 2825 6459 51* from the District Attorney's Office, declining to pursue the matter and stating that it was a "civil issue."

After termination, Toni Salinas' certified letters should not have gone unanswered, stonewalling her efforts to advocate for herself through the Personnel Policy for the City of Kermit. The City of Kermit, the city's upper management, and the Kermit City Council continually denied Plaintiff her procedural due process under the Fourteenth Amendment by refusing to respond to her certified letters, violating and invalidating the City of Kermit's own personal policies and procedures in the process.

In June 2024, Toni Salinas engaged in a protected activity of reporting sex (gender) discrimination, age discrimination, and harassment severe enough to create a hostile work

environment to Cesar Ramirez and Juan Jaime Ramos and provided video evidence to support her claims on July 10, 2024. The video footage documented the ongoing discrimination, harassment, and hostility by the younger male employees.

To date, none of the younger male mechanics have been interviewed, investigated, reprimanded, written-up, demoted, suspended, or terminated by city management regarding Plaintiff's report and video evidence of discrimination and harassment to her superiors. Also, there has been no changes to policy but through ratification and custom practices, no public announcements, and no extra training.

However, Plaintiff's "gag order" remained in effect and with her safety continually compromised as evidenced five days later on July 15, 2024, when the air brakes failed on her work truck due to all six of the truck's slack adjusters being suspiciously backed off, an improbability, while she was hauling a 13-ton load. The truck had to be towed.

The City of Kermit and upper management knew only the mechanics had access to Toni Salinas' sanitation work truck air brakes system, and yet with reckless disregard, not one of the younger male mechanics were interviewed, investigated, reprimanded, written-up, demoted, suspended, or terminated by city management regarding Plaintiff's catastrophic brake failure. To date, there has been no changes to policy, no new safety protocols implemented, no public announcements, no extra training for the mechanics, and no police report filed regarding the brakes failing under suspicious circumstances.

Note that Juan Jaime Ramos was both the Assistant City Manager and Chief of Police at the time of this incident, and even he did not initiate any type of internal or criminal investigation. Thus, Toni Salinas was treated differently than the other younger male employees after reporting discrimination and harassment to her superiors and after the brake failure on her work truck. The fact nothing was ever done neither to stop the discrimination and harassment nor to get to the truth behind the catastrophic brake failure on the truck, further supports Plaintiff's claim(s) of employment discrimination and reckless disregard for Toni Salinas' safety in the workplace by the City of Kermit and its upper management.

The constitutional violations of discrimination, harassment (hostile work environment), retaliation under Title VII, the Fourteenth Amendment, TOMA, and the Whistleblower Act

described herein were caused by the official policies, customs, and procedures of the City of Kermit. The city is liable because its final policymakers, with deliberate indifference to Plaintiff's rights, ratified the unconstitutional conduct, making it official city policy. Thus, the City of Kermit, as a municipality with its municipal liability, lost its government immunity under *MONELL* by not following their own policies and procedures.

**Cause VII: The Whistleblower Act - Violations of Occupational Safety and Health (OSH) Act**

"The Texas Whistleblower Act provides that certain public employees discriminated against for reporting a violation of the law in good faith to an appropriate law enforcement authority may sue for damages and other relief." TEX.GOV'T CODE §§ 554.001-.009 (amended by Act of May 25, 1995, 74th Leg., R.S., ch. 721, 1995 Tex.Gen. Acts ----, ----, formerly TEX.REV.CIV.STAT.ANN. art. 6252-16a, Act of May 30, 1983, 68th Leg., R.S., ch. 832, 1983 Tex.Gen. Laws 4751, repealed by Act of May 4, 1993, 73rd Leg., R.S., ch. 268, § 46(1), 1993 Tex.Gen. Laws 583, 986, and recodified.). The Act does not expressly state what causal connection a public employee must prove between his report and his employer's conduct before he is entitled to prevail in such a suit--that is, whether the report was the sole reason for the employer's actions, or only one reason among others, or something in between. We conclude that the report need not be the employer's sole motivation, but it must be such that without it the discriminatory conduct would not have occurred when it did." *TEXAS DEPARTMENT OF HUMAN SERVICES OF THE STATE OF TEXAS v. Gary HINDS,* 904 S.W.2d 629, 11 IER Cases 79, 38 Tex. Sup. Ct. J. 711.

Section 554.003(a) states: A public employee whose employment is suspended or terminated or who is discriminated against in violation of Section 554.002 is entitled to sue for [damages and other relief].

The Occupational Safety and Health (OSH) Act was enacted to "assure safe and healthful working conditions for working men and women." The OSH Act created the Occupational Safety and Health Administration (OSHA) at the federal level and provided that states could run their own safety and health programs as long as those programs were at least as effective as the federal program. Federal and state safety personnel work to ensure worker safety and health through work site enforcement, education and compliance assistance, and cooperative and

voluntary programs. Enforcement and administration of the OSH Act in states under federal jurisdiction is handled primarily by OSHA. Safety and health standards related to field sanitation and certain temporary labor camps in the agriculture industry are enforced by the U.S. Department of Labor's Wage and Hour Division (WHD) in states under federal jurisdiction. If a work site is located in a state plan state, additional safety and health requirements may apply. *Public Law 91-596 84 STAT. 1590 91st Congress, S.2193 December 29, 1970, as amended through January 1, 2004.*

Here, Toni Salinas reported significant equipment safety hazards that endangered the public to her supervisors in June of 2024.

In response, Defendants, acting under color of state law, subjected Toni Salinas to a campaign of adverse employment actions, including a retaliatory "gag order," a pretextual write-up, and ultimately, termination.

Specifically, Defendant Cesar Ramirez instructed Toni Salinas not to communicate directly with any mechanics about work-related matters and to channel all repair and safety communications solely through him.

In text message records from July 12 - 16, 2024, Toni Salinas's attempts to comply with this new, unsafe protocol while simultaneously raising concerns about her inability to verify or track necessary repairs, thereby creating a contemporaneous record of the safety hazards created by Defendant Cesar Ramirez's retaliatory order.

On July 15, 2024, five days after Toni Salinas' July 10, 2024, video report, Toni Salinas' truck suffered a catastrophic loss of its air brakes while she was hauling a 13-ton load. The truck had to be towed.

The sworn affidavit of Jimmy Harris, a certified semi-truck brake mechanic, confirms the cause of the brake failure. Mr. Harris attests that upon inspection, he found all six of the truck's slack adjusters had been dangerously backed off, rendering the brakes inoperable. He further attests that when he reported this life-threatening finding to the City's mechanics, he was reprimanded and explicitly instructed not to assist Toni Salinas.

Defendants retaliated against Toni Salinas for reporting significant equipment safety hazards and sex/gender and age discrimination, harassment, and a hostile work environment by: imposing a permanent "gag order," treating her differently from the other younger male employees in the department, harassing Toni Salinas with false disciplinary write-ups, terminating her employment, immediately replacing her with a younger male truck driver, providing a termination letter based on a series of false allegations - fabricated disciplinary history, misattributed property damage, and a false "failure to report," actively concealing evidence, and denying her procedural due process in direct conflict with the city's own policies and procedures.

Thus, Defendants violated OSHA by imposing a "gag order" and altering safety protocols, endangering Toni Salinas' safety while driving a truck for the city because Plaintiff reported significant equipment safety hazards that endangered the public to her supervisors; and thus, Defendant violated the provisions of The Whistleblower Act with regard to Toni Salinas.

**Qualified Immunity**

A government official performing discretionary functions is entitled to qualified immunity unless his conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis involves two steps: (1) the Court first determines whether the plaintiff has alleged the violation of any statutory or constitutional rights; (2) the Court then determines whether the defendant's actions clearly violated the statutory or constitutional rights of which a reasonable person would have known. *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008) (citing *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)).

Qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Zarnow v. City of Wichita Falls*, Tex., 500 F.3d 401, 409 (5th Cir. 2007) (citation omitted). Simply put, the qualified immunity shield is broad and protects actions, even mistakes, which are reasonable under the existing law. See *Fraire v. City of Arlington*, 957 F.2d 1268 at 1273-77 (5th Cir. 1992).

A party seeking damages from an official asserting qualified immunity bears the burden of overcoming the defense of qualified immunity and must first plead and prove a constitutional

violation. *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994); *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1994).

Here, the constitutional violations of discrimination, harassment (hostile work environment), retaliation under Title VII, the Fourteenth Amendment, TOMA, and the Whistleblower Act described herein were caused by the official policies, customs, and procedures of the City of Kermit and its upper management. The city is liable because its final policymakers, with deliberate indifference to Plaintiff's rights, ratified the unconstitutional conduct, making it official city policy. Thus, the City of Kermit, as a municipality with its municipal liability, lost its government immunity under *MONELL* by not following their own policies and procedures.

Mike Arismendez, Juan Jaime Ramos, and Cesar Ramirez are also liable because their misconduct listed above clearly violated established statutory or constitutional rights of Toni Salinas of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Accordingly, Individual Defendants are not entitled to qualified immunity for Plaintiffs § 1983 claims."

**Official Capacity**

A claim against a municipal official in his or her official capacity is tantamount to a suit against the municipal entity. *Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 789 (W.D. Tex. 2016), aff'd, 891 F.3d 214 (5th Cir. 2018) (citing *Monell*, 436 U.S. 658, 690 (1978)). "Thus, when a plaintiff asserts claims against both the municipal entity and a municipal official in his or her official capacity, the Court can dismiss the official capacity claim as 'redundant' to the municipal-entity claim." *Id*. (citing *Sanders–Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010)). Thus, it is within the Court's discretion to determine if the claims against both the municipality and Individual Defendants are redundant.

The City of Kermit and upper management did not follow the city's policy and procedure for city employee motor vehicle accidents as evidenced by Cesar Ramirez's admission of "no written record" in his *Certified Letter #7019 0700 0001 1474* 9529; and thus, the City of Kermit and upper management, with deliberate indifference, ratified the Personnel Policy for the City of Kermit, page 27, section 43; section 43(A)(8); section 43(B); section 44; and section 44(A) by

failing to provide any procedural due process remedy, investigate and correct the false records, or follow its own mandatory grievance procedures as found in Section 46 of the Personnel Policy for the City of Kermit, page 29. Thus, the City of Kermit, upper management, and the Kermit City Council, as the final policymakers, adopted and condoned and ratified the unconstitutional termination as the official policy of the City of Kermit.

If the Individual Defendants had followed policy and procedure in the Personnel Policy for the City of Kermit as set forth by policymakers and not ratified such independently per Department, perhaps only the City of Kermit would be liable. However, independent acts of unconstitutional misconduct, discrimination, harassment, retaliation, omissions to act, and overall procedural due process violations, under the color of state, merit liability claims for both the municipality and the independent municipal officials.

**In Conclusion**

City of Kermit, Mike Arismendez, Jaime Ramos, and Cesar Ramirez committed violations under Title VII, the ADEA, 42 U.S.C. § 1983 – Fourteenth Amendment, TOMA – Chapter 551 of the Government Code, Municipal Liability Under *MONELL* (42 U.S.C. § 1983), and The Whistleblower Act (OSHA violations).

As a result of Defendants, Plaintiff has been damaged, for which Plaintiff requests judgment.

**Declaratory Relief**

As provided by 28 U.S.C. §2201, Rules 38 and 39, Plaintiff requests the Court to render a declaratory judgment declaring a jury trial.

**Specific Performance**

Monetary damages are an inadequate remedy alone for the injuries suffered by Plaintiff as a result of Defendants' violations, because Plaintiff would have fully vested at 75 years of age had she continued working with the City of Kermit.

However, Plaintiff does not seek reinstatement of her job as a truck driver for the City of Kermit at this time.

**Exemplary Damages**

The conduct of Defendants as described above constituted intent, fraud, and malice.

Plaintiff seeks exemplary damages as provided in Section 41.003, Texas Civil Practice and Remedies Code, for which Plaintiff requests judgment.

**Liquidated Damages**

If applicable, the plaintiff requests an award of liquidated damages, for which Plaintiff requests judgment.

**Noneconomic Damages**

As a result of Defendants' conduct, Plaintiff suffered noneconomic damages as defined in Section 41.001, Texas Civil Practice and Remedies Code, for which Plaintiff requests judgment.

**Economic Damages**

As a result of Defendants' conduct, Plaintiff suffered economic damages as defined in Section 41.001, Texas Civil Practice and Remedies Code, for which Plaintiff requests judgment.

**Attorney's Fees and Costs**

Plaintiff requests judgment for reasonable attorney's fees and costs under Sections 37.009 and Chapter 38, Texas Civil Practice and Remedies Code.

**Alternative Pleadings**

As provided in Rule 48, Texas Rules of Civil Procedure, claims for relief made in this petition are presented in the alternative when necessary to preserve each claim.

**Required Initial Disclosures**

As provided in Rule 194, Texas Rules of Civil Procedure, required Initial Disclosures of all items listed in Rule 194.2 must be made at or within 30 days after the filing of the first answer unless a different time is set by the parties' agreement or court order.

Plaintiff asks the Court to keep the requirement of Initial Disclosures to be made within 30 days.

**Prayer**

Plaintiff prays that citation be issued commanding Defendants to appear and answer herein and that Plaintiff be awarded judgment against Defendants for the relief requested herein and for all other relief to which Plaintiff is entitled both in equity and at law.

Respectfully submitted,

*The Law Office of Marvilyn E. Blair, PLLC*
P.O. Box 1373
Andrews, TX 79714

***/s/ Marvilyn E. Blair***
Marvilyn E. Blair
*Attorney for TONI SALINAS*
Bar No: 24120458
Office Phone: (432) 202-8371
Cell Phone: (919) 928-2813
Email: marvilyn.blair@gmail.com